IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Alton Docherty, # 314263,<br>a/k/a Alton Dockherty,<br><br>                        Petitioner,<br><br>    vs.<br><br>Dennis Bush,<br><br>                        Respondent. | Civil Action No. 6:14-2835-TMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the district court.

## BACKGROUND

### *Trial*

The petitioner is currently incarcerated in the Lee Correctional Institution of the South Carolina Department of Corrections. He was indicted by the Sumter County Grand Jury in August 2006 for criminal sexual conduct with a minor in the first degree and lewd act on a minor (Indictment No. 2006-GS-43-0824) (app. 417–18). He was represented by Timothy Ward Murphy on these charges. On July 30, 2007, the petitioner was tried by jury before the Honorable Ferrell Cothran, South Carolina Circuit Judge. The jury found the petitioner guilty, and on August 1, 2007, Judge Cothran sentenced the

petitioner to thirty years in prison on the criminal sexual conduct charge and fifteen years consecutive for lewd act on a minor (app. 1–341, 419–20).

At the petitioner's trial, Samantha D., the petitioner's daughter-in-law and mother of the victim ("Minor"), testified that in the latter part of 2005 and the early part of 2006 the petitioner babysat Minor, her brothers, and her stepbrothers at Samantha D.'s home (app. 53). Thereafter, Samantha noticed subtle changes in Minor's behavior and physical condition. These changes included bed-wetting and soreness in her genital area (app. 56)

Minor's stepmother, Shannon Sh-H, testified that during the time frame of December 2005 through January 2006, Minor complained of pain in her genital area. Shannon further testified that Minor was wetting her bed and her pants, which was unusual for Minor. She also observed Minor not wearing underwear (app. 64). According to Shannon, Minor made several age-inappropriate comments, which concerned Shannon and Minor's father (app. 65). After hearing one such comment from Minor, Shannon engaged Minor in conversation regarding the comment. When Shannon asked Minor if anyone had touched her inappropriately, Minor responded affirmatively (app. 66). Minor indicated the inappropriate touching occurred while watching a specific movie, which Minor had seen only while in the petitioner's care (app. 66).

Minor, who was seven years old at the time of the trial, also testified at trial primarily that she could not remember what the petitioner had allegedly done to her. Her testimony was disjointed and fragmented. She stated she did not want to answer the questions posed, and the answers she provided were ambiguous (app. 165). Minor revealed that her sister, C. H., had shown her what "humping" was (app. 167-68). When the prosecution asked Minor to use anatomically-correct dolls to demonstrate what the petitioner did to her, she placed the penis of the male doll into the vagina of the female doll (app. 168-69).

2

Gwen Herod, a forensic interviewer with the victim assistance program at the Sumter County Sheriff's Office, conducted two forensic interviews of Minor (app. 202). Minor informed Ms. Herod that the sexual assault occurred at her home when she was six years old (app. 205-206). Kathy Saunders, a pediatric nurse practitioner, examined Minor and found Minor's labia, clitoris area, and urethral area were a little red. The hymenal tissue was abnormal in that on the posterior rim there was a small v-shaped cleft. The small cleft was suspicious for a past penetrating injury (app. 211, 215, 218-19).

At the conclusion of the State's case, trial counsel moved for a directed verdict on the charge of criminal sexual conduct based upon the State's failure to produce sufficient evidence to show any sort of penetration (app. 235-36). The court denied the motion, finding there was evidence in the record sufficient to establish penetration and to submit the case to the jury (app. 236).

The petitioner testified in his defense and denied any sexual contact or other inappropriate contact with Minor (app. 251). Trial counsel presented no documentary evidence or other witnesses to corroborate petitioner's testimony. At the conclusion of the defense's case, trial counsel did not renew his motion for a directed verdict (app. 271-272).

### Direct Appeal

The petitioner filed a timely Notice of Appeal and was represented by Deputy Chief Appellate Defender Wanda H. Carter. On September 25, 2008, the petitioner filed a Final Brief of Appellant raising the following issues:

> The lower court erred in denying appellant's motion for directed verdict of acquittal on the charge of first degree criminal sexual conduct with a minor because the state's case was devoid of sufficient proof of sexual battery as the victim testified that she could not recall any acts of sexual misconduct perpetrated upon her.

(App. 346). The respondent filed its Final Brief on September 17, 2008 (app. 354–65). On November 19, 2009, the South Carolina Court of Appeals affirmed the petitioner's

3

convictions and sentence (app. 366–67) in *State v. Alton Lee Docherty, Sr.*, Opinion No. 2009-UP-544 (S.C. Ct. App. Nov. 19, 2009). The Remittitur was sent to the Sumter County Clerk of Court on December 7, 2009.

***PCR***

On March 15, 2010, the petitioner filed an application for Post-Conviction Relief ("PCR"), Case No 2010-CP-43-0601, asserting that he received ineffective assistance of counsel as counsel failed to renew a motion for directed verdict after presentation of all the evidence (app. 368–73). On June 29, 2010, Charles T. Brooks, III, the petitioner's PCR counsel, filed an amended PCR application on the petitioner's behalf, raising the following allegations:

    1.  Ineffective Assistance of Counsel

        a.  Failure to procure a polygraph test.

        b.  Failure to investigate.

        c.  Failure to call witnesses (12 specific individuals)

        d.  Failure to call expert witnesses to contradict State's expert.

        e.  Attorney told Applicant to write down anything I needed to say in court, but dyslexia impaired him.

        f.  Lawyer had bias against me because he served in the Air Force, and the victim's father is in the Air Force.

        g.  Failure to enter directed verdict motion at the proper time.

(App. 379–83). The State filed its Return on January 26, 2011 (app. 374–78).

The Honorable R. Jeffrey Young, South Carolina Circuit Judge, held an evidentiary hearing into the matter on March 22, 2012, at the Sumter County Courthouse. The petitioner, prior to the PCR hearing, had requested that his court-appointed PCR counsel be relieved (app. 386). At the PCR hearing, after the PCR judge apprised the

petitioner that he would have to proceed *pro se* if his PCR counsel were relieved, the petitioner decided to continue with PCR counsel's representation and acknowledged: "I guess I have no choice because I'd be a fool to try to represent myself" (app. 387).

Assistant Attorney General Mary Williams represented the State. The petitioner testified on his own behalf, and he presented the testimony of trial counsel, Mr. Murphy (app. 384–409). Subsequently, Judge Young denied relief and dismissed the application *with prejudice* in an Order of Dismissal filed on May 22, 2012. The Order of Dismissal addressed the petitioner's claims that trial counsel was ineffective because he (1) failed to call certain character witnesses; and (2) failed to preserve the denial of his motion for directed verdict for appellate review by not renewing the motion at the close of the defense case (app. 411–16). The PCR court found that the petitioner "failed to carry his burden of demonstrating prejudice such that, but for Counsel's failure to call witnesses, the result of the trial would have been different (app. 415) (citation omitted). Therefore, counsel's trial strategy did not constitute ineffective assistance of counsel. As to the directed verdict motion claim, the PCR court found that a renewed motion by counsel would have not resulted in a different outcome (app. 414–15).

### PCR Appeal

On May 24, 2012, Mr. Brooks appealed the PCR court's decision (doc. 20-8, Notice of Appeal). On appeal, the petitioner was represented by Assistant Appellate Defender Susan B. Hackett. On February 25, 2013, the petitioner's appellate counsel filed a *Johnson* Petition for Writ of Certiorari, which is South Carolina's equivalent of an *Anders* brief. *See Johnson v. State*, 364 S.E.2d 201, 201 (S.C. 1988) (*per curiam*) ("This Court has approved the withdrawal of counsel in meritless post-conviction appeals, provided the procedures outlined in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493

(1967), were followed.").[1]  In the *Johnson* petition, the petitioner's appellate PCR counsel raised the following issue:

> Trial counsel's failure to renew his motion for directed verdict at the close of the presentation of all evidence violated the petitioner's Sixth Amendment and Fourteenth Amendment right to the effective assistance of counsel.

(Doc. 20-9 at 2).

The petitioner subsequently filed a *pro se* brief alleging the following claims of ineffective assistance of counsel:

> 1.  First, I had asked for a polygraph test.
>
> 2. . . .  He did no investigation at all
>
> 3. . . . Failure to call witnesses.  Mr. Murphy refused to contact anyone on my behalf.
>
> 4. . . . Failure to call expert witness . . . .
>
> 5. . . . Mr. Murphy said, to aid in my defense I was to write down what I needed brought up in Court, and give it to him.  I'm very dyslexic, and don't read, or spell very well at all, and Mr. Murphy knew this.
>
> 6. . . . I feel that Mr. Murphy demonstrated personal bias – conflict of interest, due to the fact that the alleged [victim's] Father, and Mr. Murphy were both in the Air Force.
>
> 7. . . . Mr. Murphy fail to enter a direct verdict motion at the proper time.
>
> 8.  . . .  I had told Mr. Murphy of a conspiracy to steal my inheritance, and he just scoffed at the notion as if it had no value.

(Doc. 20-10 at 2–3).

---

[1]*See also Pennsylvania v. Finley*, 481 U.S. 551 (1987) (prisoner, who had no equal protection or due process right to appointed counsel in post-conviction proceedings, also had no right to insist on *Anders* procedures for withdrawal of appointed counsel when collateral counsel determined direct appeal was frivolous).

6

The South Carolina Court of Appeals filed an Order denying certiorari and granting counsel's petition to be relieved on April 9, 2014 (doc. 20-11). It sent the Remittitur to the Sumter County Clerk of Court on April 25, 2014 (doc. 20-12).

## FEDERAL PETITION

On July 15, 2014, the petitioner filed his Section 2254 petition (doc. 1). In his federal petition the petitioner makes the following claims:

Ground One: Ineffective Assistance of Counsel

Supporting Facts: I am claiming ineffective assistance of counsel on my trial attorney and my P.C.R. attorney.

(Doc. 1 at 6). On October 8, 2014, the respondent filed a motion for summary judgment (doc. 21). By order filed October 9, 2014, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion (doc. 22). On November 10, 2014, the petitioner filed a response in opposition (doc. 25). In his response, the petitioner contends that (1) he is  awaiting this court's decision on his motion for reconsideration for appointment of counsel[2] (doc. 25 at 2); (2) he is disabled because of his dyslexia and has a sixth or seventh-grade educational level (*id*. at 3);  (3) it is beyond his level of understanding that the court and the South Carolina Attorney's General's Office would send to him "this level of paperwork, and especially tell him that he only has 34 days to respond" (*id*. at 3–4); (4)  the PCR court's failure to hear his motion to relieve counsel violated his due process rights to have a competent attorney (*id*.); and (5) he is concerned how the Clerk's Office put the petitioner's habeas case into its database

---

[2]While the petitioner contends that he filed a motion for reconsideration, he captioned the document as "Objection to The Honorable Kevin F. McDonald, Magistrate Judge's Denial of My Motion for Appointment of Counsel" (doc. 12). The document was docketed by the Clerk of Court as a "reply" to this court's previous order denying the petitioner's motion for appointment of counsel. As the petitioner intended the document to be a motion for reconsideration, the undersigned considered the motion and denied it by text order on April 30, 2015 (*see* doc. 27).

7

because it destroyed the petitioner's page numbers and altered the petitioner's sequence (*id*. at 4–5).[3]  Appended to the petitioner's response are what appears to be a headnote citing "Martinez Vs. Arizona" (doc. 25-1 at 1), where the petitioner was intending to cite *Martinez v. Ryan*, 132 S.Ct. 1309, 1320 (2012); copies of correspondence relating to the petitioner's motion to relieve his court-appointed PCR counsel (doc. 25-1 at 2–6); and the petitioner's certificate of service  (doc. 25-2) and cover letter (doc. 25-3) to his response to the motion for summary judgment.

## APPLICABLE LAW AND ANALYSIS

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ .P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific,

---

[3]The petitioner submitted a fifteen-page habeas petition (doc. 1) and 208 pages of exhibits (docs. 1-1, 1-2, 1-3, 1-4, and 1-6).

material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### *Exhaustion*

The respondent acknowledges that the petitioner has technically exhausted his state court remedies; however, in light of the vagueness of Ground One, neither the respondent nor the court "can determine whether he is attempting to pursue a claim(s) that was (were) exhausted or a different, unexhausted allegation" (doc. 20 at 7).  The respondent, however, indicates that the exhaustion requirement is, technically, fulfilled because any new application for post-conviction relief filed by the petitioner would be successive or untimely (*id*.).

### *Procedural Bar*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts.  In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

If a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the Supreme Court has explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

"[A] federal court ordinarily may not consider claims that a petitioner failed to raise at the time and in the manner required under state law unless 'the prisoner demonstrates cause for the default and prejudice from the asserted error.'"  *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 536 (2006)).  To show cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999).  "Alternatively, Petitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice." *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman*, 501 U.S. at 750).  A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent. However, "actual innocence" requires "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Here, the petitioner exhausted three allegations of ineffective assistance of counsel that were preserved for appellate review on certiorari by virtue of having been presented to and ruled upon by the state PCR judge. Specifically, he exhausted his claims that trial counsel was ineffective because counsel (1) failed to call certain character witnesses; (2) failed to investigate the petitioner's claim of an alleged conspiracy; and (3)

10

failed to preserve the denial of his motion for directed verdict for appellate review by not renewing the motion at the close of the defense case (app. 411-16). All other possible claims relating to ineffective assistance of counsel are procedurally defaulted and, as a result, this court need not consider the defaulted claims as the petitioner has failed to demonstrate cause and prejudice or that failure to consider the claims will result in a fundamental miscarriage of justice. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1364 (4th Cir. 1995) ("We conclude that we are barred from reviewing Kornahrens's last three claims because Kornahrens procedurally defaulted in presenting them for federal habeas review.").

**Merits**

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

11

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo. See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257–58 (4th Cir. 1999).

In his sole ground for relief, the petitioner alleges he received ineffective assistance of trial counsel and ineffective assistance of PCR counsel (doc. 1, § 2254 petition at 6).    The respondent contends that this "allegation fails to state a claim upon which relief may be granted because it is impossible for Respondent or this Court to determine what aspect of counsel's representation of which he is complaining" (doc. 20 at 9).  The respondent cites *Mayle v. Felix*, 545 U.S. 644, 649 (2005) (notice pleading allowed under Fed. R. Civ. P. 8(a)(2) for an ordinary civil case not applicable to proceedings seeking habeas corpus relief because "Rule 2(c) of the Rules Governing Habeas Corpus Cases requires a more detailed statement"). Rule 2(c) of the Section 2254 Rules provides that the habeas petition must "state the facts supporting each ground." Rule 2(c)(2) of the Rules Governing Section 2254 Cases.

The undersigned agrees with the respondent that the petitioner's one ground for relief is too vague and conclusory to warrant relief. *See Jones v. Polk*, 401 F.3d 257, 269–70 (4th Cir. 2005) (speculative and vague allegations will not support habeas claim in federal court or justify the holding of an evidentiary hearing); *Wiggins v. Lockhart*, 825 F.2d 1237, 1238 (8th Cir.1987) (stating that "a habeas corpus petitioner must allege sufficient facts to establish a constitutional claim" and conclusory statements are insufficient). However, as a court must accord a *pro se* litigant's pleadings liberal construction, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), the undersigned will address the merits of the petitioner's three exhausted claims relating to ineffective assistance of counsel: (1) trial counsel's failure to call certain character witnesses; (2) trial counsel's failure to investigate the petitioner's claim of an alleged conspiracy; and (3) trial counsel's failure to preserve denial of motion for directed verdict by not renewing it at the close of the defense case (doc. 20 at 10). As discussed below, the PCR court reasonably applied federal law in denying and dismissing the ineffective assistance of trial counsel claims. Thus, summary judgment should be granted.

To be entitled to relief on an ineffective assistance claim, the petitioner had to have shown in state court that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). However, the review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly

13

> deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations omitted).

### Failure to Call Witnesses and Investigate Conspiracy

The PCR judge addressed Claims 1 and 2 jointly (app. 414–15). At the PCR hearing, trial counsel indicated that the petitioner had given him a list of potential witnesses relating to the petitioner's character and the family strife that allegedly gave rise to the conspiracy against the petitioner. The petitioner testified that trial counsel (Murphy) would not call certain witnesses and, as a result, the petitioner, who testified at trial, did not have anyone to speak on his behalf (app. 389–90) or speak to the jury about the conspiracy behind the criminal case (app. 390–91). The petitioner also testified that trial counsel may have had a personal bias against him because trial counsel was retired from the Air Force and the victim's father was a service member of the Air Force (app. 394). Trial counsel testified that he had "inherited" the petitioner's criminal case and that the case was probably "at the time the most serious case" that he had (app. 399). Trial counsel noted that semen had been found on dolls in the petitioner's residence, the State had physical evidence of penetration, and there were statements made by the victim (app. 400–401). Trial counsel also stated that the Solicitor's Office never approached him with a plea deal and that the petitioner, who was then serving a sentence for forgeries, never expressed interest in a plea deal (app. 401). Trial counsel also testified about his pre-trial preparation included visits to the petitioner in prison, discussions about the conspiracy to deprive the petitioner of

14

property belonging to the petitioner's mother (app. 402), and contacting potential witnesses listed by the petitioner (app. 403).

Trial counsel testified that he had apprised the petitioner before trial that the petitioner's family "basically told me they wouldn't have anything good to say about" the petitioner (app. 403). Trial counsel also stated that he did not call the petitioner's mother to testify because the petitioner had been convicted of criminal domestic violence against her (app. 403). Trial counsel also apprised the petitioner that a "character" defense would not be a good idea because the Solicitor, who did not intend to introduce "evidence of the baby dolls," would do so if trial counsel "opened the door" by offering a "character" defense (app. 403–04). Trial counsel noted that the petitioner's daughter did not want to testify and reiterated that the petitioner's family members would not have anything good to say about the petitioner (app. 405). Trial counsel concluded that "it [the conspiracy theory] didn't make any sense" and that it was more effective to focus on the lack of contemporaneous corroborating evidence from the boys who were at the victim's house at the time of the alleged crimes (app. 406).

The PCR judge observed both the petitioner's testimony and the testimony of trial counsel, but concluded that the trial counsel's testimony at the PCR hearing was more credible:

### Failure to Call Witnesses

Applicant asserts that Counsel was ineffective in failing to call certain character witnesses. Counsel testified that he assumed representation of the case from another attorney. By the time Counsel became involved in the case, discovery had already been provided to Applicant. Counsel testified that he reached out to several witnesses who [*sic*] Applicant suggested. Based on his conversations with potential witnesses such as Applicant's brothers and daughter, he did not feel their testimony would be beneficial. Counsel noted that Applicant's mother had been the victim in Applicant's prior conviction for criminal domestic violence, so he did not feel it would be wise to call her as a character

15

witness. In addition to his concerns with specific witnesses, Counsel had general concerns with making character an issue. Counsel feared that presenting character witness testimony could open the door to "damning" evidence of dolls found in Applicant's home which had been used for sexual stimulation. (See Tr. p. 335, line 19 – p.. [*sic*] 336, line 10; p. 337, lines 2 – 16.)  Counsel felt that the strongest defense in pointing out that the victim's testimony was confusing and that the boys had only just before trial said anything; if they had seen something they would have said something sooner. Counsel was likewise unable to find any evidence supporting Applicant's conspiracy theory in speaking with the witnesses, and Counsel opined that Applicant's theory that family members had conspired to get him out of the way did not make sense.

I find Counsel's testimony to be credible. I further find that Counsel articulated a reasonable basis in failing to pursue and present evidence of the defendant's character. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. *Whitehead v. State*, 308 S.C. 119, 417 S.E.2d 530 (1992). Further, Applicant has failed to carry his burden of demonstrating prejudice such that, but for Counsel's failure to call witnesses, the result of the trial would have been different. *Lorenzen v. State*, 376 S.C. 521, 530, 657 S.E.2d 771, 776-777 (2008) (where witness does not testify, it is merely speculative that allegedly favorable expert witnesses would have aided defense).

(App. 414–15).

The PCR court reasonably applied federal law in finding trial counsel was not ineffective. Though the PCR court cited to state law in its order (app. 414–15), these same principles are also part of the federal law set forth in *Strickland. See Strickland*, 466 U.S. at 690–91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

The petitioner must show by clear and convincing evidence that the PCR court's credibility determinations were incorrect, *Wilson v. Ozmint*, 352 F.3d 847, 858–59

16

(4th Cir. 2003), and that these incorrect credibility determinations resulted in an improper adjudication by the PCR court. 28 U.S.C. § 2254(d)(2). A petitioner has the burden of showing that trial counsel's performance was deficient and must overcome the strong presumption that a trial counsel's conduct falls within the broad range of reasonable professional assistance. *Strickland*, 466 U.S. at 687–89. The petitioner has failed to make such a showing, and, therefore, Claims 1 and 2 of Ground One should be dismissed.

### *Failure to Renew Motion for Directed Verdict*

Trial counsel, at the end of the prosecution's case, moved for a directed verdict in favor of the petitioner on the charge of criminal sexual conduct based upon the State's failure to produce sufficient evidence to show any sort of penetration (app. 235-36). The court denied the motion, finding there was evidence in the record sufficient to establish penetration and to submit the case to the jury:

> THE COURT:  And at this point the situation is whether they are consistent with the evidence and not the weight of the evidence, and I think that there's evidence in this record that a jury could make the determination that it's in the record.
>
> My recollection of the testimony is based on Mrs. Saunders' testimony that her findings were consistent with penetration in that the child – her demonstration before the jury attempted to take the penis of the male doll and insert it into the vagina of the female doll, was trying to do that.
>
> So I think that there's at least evidence in this record that this case should go to the jury, so I respectfully deny your motion.

(App. 236).

Longstanding South Carolina case law requires that a trial counsel, so to speak, "renew" a previously-denied motion for directed verdict at the close of the defense case in a criminal case. *See State v. Parler*, 59 S.E.2d 489, 489 (1950) (holding when a defendant moves for a directed verdict at the close of the prosecution's evidence, defendant must renew the motion at the close of all the evidence to preserve the issue for

17

appeal).  At the PCR hearing, the petitioner contended that trial counsel's failure to enter a directed verdict request at the proper time "cost[]" the petitioner his appeal (app. 395). Trial counsel testified that he did not renew his motion for a directed verdict at the end of the defense case because the State had presented evidence of penetration:

> Q:  And you had made arguments that they had failed to demonstrate certain elements of the offense as part of that motion?
>
> A:  I did.
>
> Q:  But you did not do that at the end?
>
> A:  No.  I struggle making that motion to be honest with you. You know my experience with the military in court marshal [*sic*: should read "martial"], we don't make that kind of motion unless, to be frank, unless you are going to need them and, you know, at the time, I remember thinking at the time I wonder rather or not I should be making this because I believe the State had enough evidence, I mean, there was evidence of penetration.  And it's a scintilla test but I made it and obviously I didn't renew it.

(App. 408).

The PCR judge found that even if trial counsel had renewed his motion for directed verdict at the end of the case, "the result would have been no different" because the trial court's earlier denial of the motion "was based both on the victim's demonstration of intercourse using dolls and the physical evidence of a possible penetrating injury[,]" which "represented some evidence to submit the case to the jury" (app. 415).

In his response (doc. 25) to the respondent's motion for summary judgment, the petitioner does not expressly address Claims 1, 2, or 3, but contends that the PCR court failed to address his motion to relieve counsel.  But as noted earlier in this report, the PCR transcript reveals that the petitioner elected to proceed with court-appointed PCR counsel when the PCR judge apprised him that he would have to proceed *pro se* if his court-appointed counsel were relieved (app. 386–88).

The PCR judge correctly concluded that trial counsel was not required, at the end of the defense case, to renew a meritless motion that had already been denied at the close of the prosecution's case (app. 415). *See, e.g., Smith v. Padula*, 444 F. Supp. 2d 531, 539 (D.S.C. 2006) ("In short, trial counsel cannot be ineffective for failing to make a meritless futile objection. Neither *Strickland* prong was satisfied, and no habeas relief should issue."*); Almon v. United States*, 302 F. Supp. 2d 575, 586 (D.S.C. 2004) ("There can be no ineffective assistance of counsel for failing to raise a claim which is not legally viable.").

A state court's finding on a claim of the ineffective assistance of counsel is a combination of a finding of fact and a conclusion of law. Although applicable precedents require this court, under 28 U.S.C. § 2254, to make its own determination of both the performance and (if necessary) the "prejudice" components highlighted in *Strickland*, the historical facts decided by a court of a state in a claim of ineffective assistance of counsel remain subject to deference. *See Williams*, 529 U.S. at 411. The undersigned finds that the PCR court properly determined that trial counsel was not ineffective, and, therefore, this claim should be dismissed.

### Ineffectiveness of PCR Counsel

The petitioner's claim relating to the alleged ineffectiveness of PCR counsel is not cognizable under the federal habeas corpus statutes. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); and *Auls v. Cohen*, Civil No. 3:11-2930-RMG, 2013 WL 496239, at *3 (D.S.C. Feb. 6, 2013) ("Petitioner also objects that his PCR counsel was ineffective . . . , however, this is not a proper basis for a § 2254 petition"); *cf. Martinez v. Ryan*, 132 S.Ct. 1309, 1320 (2012) (§ 2254(i) precludes habeas petitioner from relying on the

19

ineffectiveness of his or her post-conviction attorney as a ground for relief but not from establishing cause for a procedural default).

*Martinez* is not on point in the above-captioned case because the three aforementioned claims of ineffective assistance of counsel in this case were preserved for federal habeas review.  As to any ineffective assistance claims *not* raised in the appeal (petition for certiorari) in the PCR case [amended PCR Grounds 1(a), (b), (d), (e), and (f)], *Martinez* is not applicable to post-conviction appellate counsel.  *See Martinez*, 132 S.Ct. at 1320 (holding "does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts"); and *Saratt v. Cartledge*, Civil Action No. 8:14-cv-138-RBH, 2015 WL 628186, at *20 (D.S.C. Feb. 12, 2015) ("The *Martinez* exception does not extend to PCR appellate counsel. . . . Therefore, Petitioner has not demonstrated cause for not raising these issues in his petition for writ of certiorari, and these grounds are procedurally defaulted."), which collects cases in the District of South Carolina.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 21) be granted.  The attention of the parties is directed to the notice on the next page.

s/ Kevin F. McDonald
United States Magistrate Judge

May 6, 2015
Greenville, South Carolina

20

**Notice of Right to File Objections to Report and Recommendation**

        The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

        Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

        **Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

21
